# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS PENSION FUND, ) ) ) | Case No. |
| Plaintiff, ) ) | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| vs. ) ) | |
| F. MICHAEL BALL, HERBERT W. BOYER, Ph.D., DEBORAH DUNSIRE, M.D., JEFFREY L. EDWARDS, MICHAEL R. GALLAGHER, DAWN E. HUDSON, ROBERT A. INGRAM, TREVOR M. JONES, Ph.D., LOUIS J. LAVIGNE, JR., DAVID E.I. PYOTT, RUSSELL T. RAY, STEPHEN J. RYAN, M.D., and SCOTT M. WHITCUP, ) ) ) ) ) ) ) ) ) ) | |
| Defendants, ) ) | |
| -and- ) ) | |
| ALLERGAN, INC., ) ) | |
| Nominal Defendant. ) | |

Plaintiff New Jersey Building Laborers Pension Fund ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through its attorneys, except as to those allegations that pertain to the Plaintiff itself, which are alleged upon knowledge, as follows:

## INTRODUCTION

1.     Plaintiff brings this action derivatively on behalf of Allergan, Inc. ("Allergan" or the "Company") against the Company, the Company's board of directors (the "Board"), and its executive officers to challenge the dissemination of a materially false and misleading proxy statement requesting shareholder approval of the Allergan 2011 Incentive Plan (the "Plan").  As

set forth below, the Plan is defective and, thus, non-tax-deductible pursuant to the tax code and applicable regulations, needlessly depriving the Company of millions of dollars in tax benefits.

2.      On March 8, 2011, the Company disseminated the Notice of Annual Meeting of Stockholders and the 2011 Proxy Statement (the "Proxy Statement"), which was false and misleading, and omitted material information specifically required by the Securities Exchange Act of 1934 (the "Exchange Act") and United States Securities and Exchange Commission (the "SEC"), Rule 14a-9, Schedule 14A, and Regulation S-K, promulgated thereunder.  The Proxy Statement represented to the stockholders that executive compensation under the Plan would be tax-deductible if the stockholders approved the amendment to the Plan.  However, even with stockholder approval, the representation that the compensation would be tax-deductible was materially false and misleading because the Plan fails to comply with 26 U.S.C. § 162(m) ("IRC § 162(m)") and its relevant regulations for allowance of deductibility.  The Plan is also not tax-deductible because the Proxy Statement omits information, specifically required by SEC regulations, necessary for stockholder approval of IRC § 162(m) compensation plans.

3.      The Proxy Statement solicited stockholder approval of the Plan at the annual meeting of the stockholders of the Company held on May 3, 2011 and materially misinformed stockholders about the tax-deductibility of the Plan.  The Plan fails to comply with the applicable tax laws and regulations to qualify for the tax deductions that were represented in the Proxy Statement.  The stockholders nevertheless approved the Plan at the annual meeting.

4.      By distributing a materially false and misleading Proxy Statement, defendants caused the stockholders to approve an incentive compensation plan that is non-tax-deductible but was represented as fully compliant and meeting the standards of IRC § 162(m).  The false and

misleading Proxy Statement also tainted the stockholder vote for those directors who were up for re-election.

5.      By not having a compliant incentive compensation plan, defendants have committed, and will continue to commit, corporate waste.  There is no reason not to implement a compliant compensation plan that preserves corporate assets by avoiding tax liability.  Indeed, the members of the Board have an affirmative duty to construct a compensation plan that will obtain maximum possible tax deductions for the Company.

6.      In addition, by having a defective § 162(m) compensation plan, the Company is essentially forfeiting significant tax deductions.  This careless behavior is important information for investors in deciding whether or not to purchase stock in a company, as it reflects the riskiness of the company.

7.      Plaintiff seeks, for relief, corrected disclosures by means of the dissemination of a new proxy statement, a new stockholder vote on the approval of the Plan, and an equitable accounting with disgorgement of the compensation that was paid to the defendants pursuant to the defective Plan.

## JURISDICTION

8.      The jurisdiction of this Court is founded upon: (a) federal question jurisdiction, pursuant to § 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331; (b) diversity of citizenship, 28 U.S.C. § 1332, and (c) supplemental jurisdiction, 28 U.S.C. § 1367(a).  Plaintiff is a citizen of the State of New Jersey.  The defendants are all citizens of jurisdictions other than New Jersey.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.      Plaintiff brings this action derivatively to obtain specific equitable relief for the false and misleading Proxy Statement that failed to comply with the Exchange Act, SEC

Regulations, Treasury Regulations, and Delaware law governing the contents of proxy statements and for breaches of fiduciary duty under Delaware law. The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9, of the SEC rules promulgated thereunder; SEC Schedule 14A, 17 C.F.R. § 240.14a-101; SEC Reg. S-K (Item 402), 17 C.F.R. § 229.402, and the laws of Delaware. In addition, IRC § 162(m) and the Treasury Regulation, 26 C.F.R. § 1.162-27, are applicable.

10.     This action is not a collusive one to confer jurisdiction that the Court would otherwise lack. This action does not allege securities fraud or any other fraud. It does not seek to recover damages, but rather seeks specific, equitable relief. This is an action based on the false and misleading Proxy Statement and on the Board's breaches of fiduciary duty.

## PARTIES

11.     Plaintiff is a stockholder of the Company and was a stockholder at the time of the wrongs alleged herein, and has been such continuously since then.

12.     Nominal Defendant Allergan is a corporation organized under the laws of the State of Delaware. The Company's last fiscal year ended December 31, 2010. On October 31, 2011, it had 307,511,888 shares of stock issued and outstanding. The Company's stock is traded on the New York Stock Exchange under the ticker symbol AGN. Allergan is a global specialty pharmaceutical company. Its product ranges include ophthalmic pharmaceuticals, dermatology products, and neurological products, most notably, Botox. Allergan's principal place of business is 2525 DuPont Drive, Irvine, California 92612.

13.     Defendant Herbert W. Boyer, Ph.D. ("Boyer") is the Vice Chairman of the Board since 2001, the Chairman of the Board from 1998 to 2001, and a member of the Board since 1994. Boyer is also a member of the Corporate Governance Committee and the Science & Technology Committee.

14.     Defendant Deborah Dunsire, M.D. ("Dunsire") was appointed to the Board in 2006.   Dunsire is a member of the Corporate Governance Committee and the Science & Technology Committee.

15.     Defendant Michael R. Gallagher ("Gallagher") was elected to the Board in 1998. Gallagher is a member of the Audit & Finance Committee and the Organization & Compensation Committee.

16.     Defendant Dawn E. Hudson ("Hudson") was appointed to the Board in 2008. Hudson is a member of the Audit & Finance Committee and the Organization and Compensation Committee.

17.     Defendant Robert A. Ingram ("Ingram") was appointed to the Board in 2005. Ingram is the Chair of the Corporate Governance Committee and a member of the Organization & Compensation Committee.

18.     Defendant Trevor M. Jones, Ph.D. ("Jones") was appointed to the Board in 2004. Jones is a member of the Corporate Governance Committee and the Science & Technology Committee.

19.     Defendant Louis J. Lavigne, Jr. ("Lavigne") was appointed to the Board in 2005. Lavigne is a member of the Audit & Finance Committee and the Organization and Compensation Committee.

20.     Defendant David E.I. Pyott ("Pyott") was elected to the Board in 1998, when he joined Allergan.  Pyott has also been the Company's Chief Executive Officer ("CEO") since January 1998 and in 2001, became the Chairman of the Board.  Pyott also served as President of the Company from January 1998 until February 2006.  He resumed his position as President

when, as stated below, defendant Ball (defined below) resigned from his position as President in March 2011.

21.   Defendant Russell T. Ray ("Ray") was elected to the Board in 2003.  Ray is the Chair of the Audit & Finance Committee and a member of the Organization & Compensation Committee.

22.   Defendant Stephen J. Ryan, M.D. ("Ryan") was elected to the Board in 2002. Ryan is the Chair of the Science & Technology Committee and a member of the Audit & Finance Committee.

23.   Defendant Leonard D. Schaeffer ("Schaeffer") has been on the Board from 1993 through the Company's annual meeting of stockholders, serving as Chair of its Organization and Compensation and Corporate Governance Committees.

24.   Defendants in paragraphs 13-23 are collectively referred to as the Board or the Director Defendants.

25.   Defendant F. Michael Ball ("Ball") was, up until March 27, 2011, the President of Allergan.  Ball departed Allergan to join Hospira, Inc. as its CEO.

26.   Defendant Jeffrey L. Edwards ("Edwards") has been the Company's Executive Vice President, Finance and Business Development and Chief Financial Officer ("CFO") since September 2005.  Edwards joined Allergan in 1993.

27.   Defendant Scott M. Whitcup ("Whitcup") has been the Company's Executive Vice President, Research and Development since July 2004 and in April 2009, became the Company's Chief Scientific Officer.  Whitcup joined Allergan in 2000.

28.   Defendants in paragraphs 25-27 plus Pyott are collectively referred to as the "Officer Defendants," and collectively with the Director Defendants, the "Individual

Defendants." They will also be referred to as the "Covered Employees" as defined in IRC § 162(m)(c)(ii)(2), and "Named Executive Officers" as defined in Regulation S-K, 17 C.F.R. § 229.402(a)(3), and "Officers" as defined in 10 *Del. C.* § 3114(b).

29.     All of the Individual Defendants are eligible to receive payments from the Plan.

## SUBSTANTIVE ALLEGATIONS

### Requirements for Tax-Deductibility Under IRC § 162(m) and Treas. Reg. § 1.162-27

30.     IRC § 162(m) imposes a $1 million limit on the amount a publicly held corporation may deduct for compensation paid to Covered Employees. The same provision allows for an exception to this limit for compensation that qualifies as "performance-based" as defined by the IRC § 162(m) and the regulations promulgated thereunder. Whereas IRC § 162(a)(1) allows the public company to obtain, as an income tax deduction, "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, IRC § 162(m) imposes restrictions on that deduction for the compensation of the Company's Covered Employees. The Covered Employees, as defined in IRC § 162(m)(3), are the CEO and the highest compensated officers, excluding the CFO, unless the CFO also holds a position at the company that is one of the three most highly compensated executive officers of the company for the taxable year. For compensation in excess of $1 million, in order for that compensation to qualify for the exception under § 162(m), the Plan must comply with the requirements of IRC § 162(m) and 26 C.F.R. § 1.162-27 ("Treas. Reg. § 1.162-27"). For fiscal year ending 2010, the Covered Employees were Pyott, Edwards,[1] Ball, and Whitcup.

---

[1] Edwards is the Company's CFO but also holds the position of Executive Vice President of Finance and Business Development and is also the second highest compensation executive officer of the Company. Therefore, he is a "Covered Employee" as defined by the Regulations.

31.     Congress enacted IRC § 162(m) not as a revenue device, but as part of its effort to regulate corporate affairs in favor of stockholders and other investors.  In particular, it is designed to be a counterweight to the policies of many states to regulate corporations that operate in favor of officers, directors, and other insiders.  Here, Congress employed the tax code not as a revenue generating device, but as an instrument of corporate governance.  As the Joint Committee on Taxation stated: "The $1 million deduction limitation reflects corporate governance issues regarding excessive compensation, rather than issues of tax policy."  Joint Committee on Taxation, Report of Investigation of Enron Corporation and Related Entities Regarding Federal Tax and Compensation Issues and Policy Recommendations, 2003 WL 25599037 n.2211 (2003) and accompanying text.  As a part of the Tax Code, IRC § 162(m) is construed like other Tax Code provisions.

32.     IRC § 162(m) provides that compensation paid to a public company's Covered Employees will be tax-deductible, but only up to $1 million, *unless* the compensation is paid solely for attaining one or more *objective* performance goals.  To qualify for the deduction, the performance goals must: (i) be determined by a two-or-more member compensation committee of the board of directors; (ii) along with the applicable corporate officers' compensation package, be disclosed to, and approved by, a shareholder majority vote; and (iii) be confirmed by the compensation committee as being met before any compensation is paid.  Treas. Reg. § 1.162-27(e)(v)(2).

33.     The Proxy Statement is materially false in stating that the Plan is *designed* to allow awards made under the Plan to qualify as performance-based compensation under § 162(m).  As shown below, none of the compensation paid or to be paid are tax-deductible and the Plan is in fact not designed to allow for tax-deductibility.  The Plan and the Company's

interpretation of the Plan in the Proxy Statement do not meet the exacting standards of the IRC and the regulations. Thus, the Company cannot properly deduct the payments paid pursuant to the Plan, even if the stockholders approve it.

34.     The Director Defendants, on or around March 8, 2011, authorized the distribution of the Proxy Statement by means of which they solicited the proxies of Allergan stockholders for, *inter alia*, the election of the Class I Directors, ratifying the selection of the Company's independent registered public accounting firm for 2011, approving the Plan, and considering advisory votes on compensation matters, etc.

35.     All Individual Defendants permitted the use of their names in the Proxy Statement to solicit proxies.

36.     The Plan permits the grant of the following types of awards: (i) stock options, (ii) restricted stock options, (iii) restricted stock, (iv) stock appreciation rights ("SARs"), (v) dividend equivalents, (vi) stock payments, (vii) deferred stock, (viii) performance awards; and (ix) performance-based compensation under § 162(m).

37.     The Proxy Statement represented that the affirmative vote of a majority of the votes duly cast is required for approval of the amendment of the Plan under IRC § 162(m) and Treas. Reg. § 1.162-27(e)(v)(2). The Proxy Statement attached to it a copy of the Plan for stockholders to examine and review for purposes of seeking their approval of the amendment of the Plan. According to the Proxy Statement and the terms of the Plan, the newly amended Plan became effective on May 3, 2011, the date of the Annual Meeting.

38.     The Proxy Statement is materially false and misleading in that it failed to disclose, with the requisite meaningful specificity, the material terms and provisions under which the

incentive compensation is to be paid.   The House Conference Report, reciting the intent of

Congress in passing IRC § 162(m)(4)(C)(ii), states:

> In developing standards as to whether disclosure of the terms of a
> plan or agreement is adequate, the Secretary [of the Treasury]
> should take into account the SEC rules regarding disclosure.   To
> the extent consistent with those rules, however, disclosure should
> be *as specific as possible*.

H.R. Conf. Rep. 103-213, 199 WL 302291, at *588 (Aug. 4, 1993) (emphasis added).   The

Treasury Regulations expressly refer to the applicability of the SEC regulations.   *See* Treas. Reg.

§ 1.162-27(e)(4)(v).

39.     While a general description of the business criteria upon which the performance

goals may be based need not be a specific articulation of the measures to be used, compensation

plans must be informative enough for the stockholder who is voting for the plan to know the

performance criteria they are approving.   Treas. Reg. § 1.162-27(e)(4) mandates that the

"description of the business criteria on which the performance goal is based" must be disclosed.

Moreover, a performance goal needs to be objective, which, pursuant to the Treasury

Regulations, is "if a third party having knowledge of the relevant facts could determine whether

the goal is met." Treas. Reg. § 1.162-27)(e)(2)(i).

40.     The Plan contains significant flaws so as to disqualify any compensation paid

pursuant to the plan from the tax deduction.   First, the Plan offers a laundry list of thirty-two

performance goals that could determine executive compensation in the future.   These metrics,

other than the ones that are calculated under Generally Accepted Accounting Principles, are not

fully defined, and the Plan does not explain how these metrics will be weighted in regards to

performance.

41.     Second, some of these goals are difficult, if not impossible, to measure, such as

"productivity," "operating efficiency," and "customer satisfaction."

42.     Third, the Plan does not mention whether it will always measure its list of thirty-two performance goals internally or externally against the Company's peer groups.   The Compensation Committee may decide to measure internally one year and externally another year, causing the Plan to be non tax-deductible because a third-party does not have all the information to calculate compensation.

43.     Because of the lack of material information regarding the performance goals, shareholders are therefore left without a way to determine how difficult it will be for the executive or how likely it will be for the Company to achieve the undisclosed targets.

44.     Further, the objective performance goal also needs to be preestablished as defined pursuant to Treas. Reg. § 1.162-27(e)(2)(i).   Under the Treasury Regulations:

> Qualified performance-based compensation must be paid solely on account of the attainment of one or more preestablished, objective performance goals.   A performance goal is considered preestablished if it is established in writing by the compensation committee no later than 90 days after the commencement of the period of service to which the performance goal relates, provided that the outcome is *substantially uncertain* at the time the compensation committee actually establishes the goal.   However, in no event will a performance goal be considered to be preestablished if it is established after 25 percent of the period of service has elapsed.

45.     This means that if the Compensation Committee uses a performance period equal to or greater than one year for the Plan, then it will have 90 days from the beginning of the year to set the goals.   However, if it chooses a performance period of less than one year, then it will only have until 25 percent of the period has elapsed in which to set the performance goals.

46.     The Proxy Statement and the Plan state that the Compensation Committee "will have the discretion to select the length of the performance period."   This means that the length of the performance period can be as short as a day, or any other length that could possibly render the outcome to be not substantially uncertain.   For example, the Compensation Committee can

decide that the compensation be paid out if operating earnings or net earnings reach a certain amount in 30 days. However, it is not substantially uncertain that the goal would be reached because the Compensation Committee can easily foresee the outcome and manipulate the metrics in the short term accordingly.

47.     The Treasury Regulations also mandate disclosure of either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained. The Plan disclosed the maximum shares subject to awards of stock options, SARs and/or stock awards under the Plan to be 1,500,000 shares per year per participant and the maximum amount that may be paid in cash is $5,000,000. This only tells the stockholder that, based on the Company stock price on March 3, 2011, $72.06, each participant is eligible to receive $113,090,000. This astronomical number, if it is a true maximum, shocks the conscience as to the amount of corporate waste the Board may commit. If the Plan does not actually intend to award compensation close to this amount, then the artificial maximum does not adequately inform the stockholder what each participant may realistically receive pursuant to Treas. Reg. § 1.162-27(e)(4). Treas. Reg. § 1.162-27(e)(4)(iv) states that "[d]isclosure as to the compensation payable under a performance goal must be specific enough so that shareholders can determine the maximum amount of compensation that could be paid to any employee during a specified period. If the terms of the performance goal do not provide for a maximum dollar amount, the disclosure must include the formula under which the compensation would be calculated."

48.     Finally, the Proxy Statement, in seeking a shareholder vote on the Plan, states that "[i]f the stockholders do not approve the 2011 Plan, the 2008 Plan will continue in full force and effect." Proxy Statement at 23. This statement violates Treas. Reg. 1.162-27(e)(2)(v) and

Section 14(a) because payments made regardless of stockholder approval are not tax deductible. However, the material terms to the 2008 Plan are identical to the 2011 Plan, and thus, payments made pursuant to the 2008 Plan are also non-tax-deductible.  Because the defendants would still pay compensation under the 2008 Plan regardless of stockholder approval of the 2011 Plan, no vote of the stockholders would make such payments deductible, contrary to the representations and omissions in the Proxy Statement.  Under Treas. Reg. 1.162-27(e)(2)(v), compensation is not paid "solely" on account of the achievement of performance goals "if the facts and circumstances indicate that the employee would receive all or part of the compensation regardless of whether the performance goal is attained."  If the payment of compensation under an arrangement that is not performance based is contingent upon the failure to achieve performance goals under an arrangement that is otherwise performance based, neither arrangement will qualify under the performance-based compensation exception.

## WRONGFUL ACTS AND OMISSIONS UNDER § 14(A) OF THE EXCHANGE ACT

**Defendants Issued A Materially False And Misleading Proxy Statement To Solicit Shareholder Approval of The Amended Plan.**

49.     On or about March 3, 2011, the Individual Defendants authorized the distribution of the Proxy Statement by means of which they solicited the proxies of the Company's stockholders for, *inter alia*, the election of directors and approval of the Plan.

50.     All the Individual Defendants permitted the use of their names in the Proxy Statement, therefore participating in the soliciting of proxies in contravention of Rule 14a-9.  *See* § 14(a), 15 U.S.C. § 78n(a).

51.     The Proxy Statement and the Plan both promised tax-deductions for certain compensation for the Officer Defendants pursuant to IRC § 162(m) and the treasury regulations promulgated thereunder.   The Proxy Statement states, in pertinent part, "The 2011 plan is

*designed* to enable us to grant performance-based equity and cash awards that qualify as 'performance-based compensation' under Section 162(m) of the Code." Proxy Statement at 23.

52.     Because the Proxy Statement solicited stockholder approval of the amendment, SEC Schedule 14A, 17 C.F.R. § 240.14a-101 (Item 8(b)) required the Proxy Statement to disclose the information required by Regulation S-K, 17 C.F.R. § 229.402(b)(2)(xii), which is the "impact of the accounting and tax treatments of the particular form of compensation" for the Named Executive Officers.  The representation in the discussion of tax treatment in the Proxy Statement stating that any part of the Plan was tax-deductible for the Named Executive Officers is false.

53.     The above representation in the Proxy Statement, that the Plan was designed to allow for tax-deductions, was materially false or misleading, because even if the stockholder did vote for the Plan, the Company would not be eligible for the deduction under the applicable tax laws and regulations.

54.     Given the defects in the Plan, the Proxy Statement was materially false in representing that any part of the Plan complied with IRC § 162(m) and that the compensation paid to the Covered Employees was or will be tax-deductible.  This misrepresentation violated § 14(a) of the Exchange Act and Rule 14a-9.

55.     To the extent that the Treasury Regulations are supplemented by the SEC Regulations, Treas. Reg. § 1.162-27(e)(4)(v), Regulation S-K requires that a Proxy Statement must either disclose targets or discuss how difficult it will be for the Company to achieve the undisclosed target levels.  17 C.F.R. § 229.402 (Instruction 4).  Moreover, the proxy statement must also disclose how non-GAAP target levels are calculated from the audited financial statements.  17 C.F.R. § 229.402 (Instruction 5).  As described above, the Proxy Statement does

not disclose how the performance goals are measured, and the Company's audited financial statements do not disclose how they are measured. These material omissions are unlawful under Section 14(a), 15 U.S.C. § 78n(a).

56.     All of the Individual Defendants made material misrepresentations and omissions concerning the deductibility of the incentive payments under the Plan, and material information regarding the terms of the Plan.

57.     All of the Individual Defendants omitted the performance goals which are required to be disclosed in order to qualify for the tax deductions under IRC § 162(m).

58.     All of the Defendants' acts and omissions have caused injury to the Company as well as to its stockholders, who were deprived of all material facts necessary to make a fully informed vote on whether to approve the amendment to the Plan, and whether to elect the Board members.

## STATE LAW ALLEGATIONS

59.     Under Delaware law, Individual Defendants owe a fiduciary duty of loyalty, including good faith and fair and full disclosure. The Director Defendants breached those duties by failing to institute a compensation plan that would permit the payment of tax-deductible compensation to the Company's executive officers. The Officer Defendants breached their fiduciary duties, including the duty of loyalty, by receiving the non-tax-deductible payments and agreeing to receive future non-tax-deductible payments.

60.     Because the Plan is invalid and defective, such awards will subject the Company to millions of dollars in unnecessary tax liability. The Board's payment of compensation that is not properly tax-deductible constitutes waste of corporate assets. Unnecessary tax payments constitute waste because the Company is under no duty to structure a compensation plan that will incur federal taxes. IRC § 162(m) is a tool Congress utilizes to regulate executive compensation

and to assure that it is aligned with performance. The adoption of such a defective Plan is a complete disregard of corporate governance.

61.     The aforesaid breach of duties of loyalty and good faith and the misrepresentations and omissions in the Proxy Statement have caused, and are continuing to cause, injury to the Company and its stockholders.

## DEMAND ALLEGATIONS

62.     Substantive requirements of demand are governed by the law of Allergan's state of incorporation – Delaware.

63.     Plaintiff has not made any demand on the Company's Board to institute this action because doing so would be a futile act.

64.     The entire Board is interested in the transactions and events alleged herein. All of the members of the Board are eligible to participate in the Plan and are thus interested under Delaware law. Their interest lies in the fact that each director is entitled to receive a personal financial benefit that is not equally shared by the stockholders, and seeking stockholder votes for approval of the amendment of the Plan constituted a self-dealing transaction.

65.     The Director Defendants are, in addition to the awards that are given to participants of the Plan generally, eligible to receive Transition Restricted Stock Awards subject to the approval of the 2011 Plan. Therefore, the Director Defendants have a self-serving reason to make certain that the Plan is approved.

66.     Demand is also excused because the acts alleged herein are not acts of sound business judgment. The demand requirement and its exceptions are to encourage intra-corporate resolutions of disputes and to obtain the business judgment of the board of directors on whether the litigation is in the best interest of the corporation and its shareholders. However, where, as here, a stockholder sues the board of directors over an act that is not a decision concerning the

management of the business and affairs of the corporation, but one of disclosure, the business judgment rule does not apply.  Delaware law excuses demand whenever the challenged act of the board is not the product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested or independent.  Here, the Board's conduct concerning the misrepresentations and omissions in the Proxy Statement is not a matter of business judgment, and therefore not protected by the business judgment rule for the following reasons:

(a)     When, for the stockholders' annual meeting, a corporate board solicits stockholders' votes for directors and for the approval of the actions of the board and its committees, the board owes the stockholders a statutory and fiduciary duty of full and fair disclosure, meaning that all material facts must be fully and fairly disclosed and no material facts may be omitted.  This duty of disclosure is a thing apart from the duty and authority to deal with the business and property of the corporation.  Courts give deference to a corporate board of directors as to questions of management of the corporation's business only, but not as to questions of the board's performance of its disclosure duties.  This is because a board's decision, even in good faith, to misstate or to omit a material fact cannot be defended on the grounds that reasonable persons could differ on the subject.  In addition, although courts may not be well suited to making business decisions, courts are well-suited to deciding questions concerning the quality of, and circumstances surrounding, disclosures.

(b)     As with Delaware law, under federal policy there is no need for prior demand on the board with respect to a claim of misrepresentations or omissions in a proxy statement.

(c)    At bar, the Proxy Statement contains materially false or misleading statements and omissions concerning the tax-deductibility of payments under the Plan and the standards and variables for determining compensation under the Plan.

67.    Similarly, due to the breaches of loyalty and good faith as set forth herein, Defendants have a substantial likelihood of non-exculpated liability and are thus unable to impartially consider a demand.

68.    The Director Defendants had the tools at hand, *i.e.*, complying with § 162(m) and the Treasury Regulations, to obtain a tax deduction on the qualified compensation and to properly disclose the same.  Instead, they produced a defective compensation plan that was supposed to be designed to receive such tax-deductions as well as ensuring that the compensation will reward performance, but failed to accomplish this task.  Payments of such non-tax-deductible compensation constitute waste, which is not protected by the business judgment rule, and therefore, demand is excused.

69.    The unrealistic and maximum amount of compensation payable to the participants is so great that it not only constitutes waste, but shocks the conscience.  The Board's adoption of the Plan and their proposal to the stockholders to amend the Plan is cause to excuse demand.

## COUNT I

**Violations of § 14(a) of the Exchange Act, SEC Regulations, and IRC § 162(m) and its Accompanying Regulations**

**(Derivative Claim On Behalf of the Company Against All Defendants)**

70.    Plaintiff realleges the preceding paragraphs as set forth and incorporates them herein by reference.

71.    The acts of the Individual Defendants in distributing the false and misleading Proxy Statement have injured the Company by interfering with proper corporate governance on

its behalf that follows the free and informed exercise of the stockholders' right to vote for directors and for compensation plans.

72.     As a result of these actions of the Individual Defendants, the Company has been and will be damaged.

73.     Plaintiff has no adequate remedy at law.

74.     The Court should require the Individual Defendants to distribute to the Company's stockholders corrected disclosures for 2011 and hold a new vote.

## COUNT II

### Breach of Fiduciary Duty

**(Derivative Claim On Behalf of the Company Against the Individual Defendants)**

75.     Plaintiff realleges the preceding paragraphs as set forth and incorporates them herein by reference.

76.     The conduct of the Individual Defendants in seeking stockholder approval of the Plan without adhering to SEC regulations and IRC § 162(m) and its accompanying regulations, causing the compensation to be non-tax-deductible, is irrational and constitutes waste, and it has caused and will continue to cause injury to the Company. An injunction requiring such approval upon full and fair disclosure and an equitable accounting are required to redress those injuries.

77.     The acts of the Named Executive Officers in accepting non-tax-deductible compensation under the Plan, in including their names in the false or misleading Proxy Statement seeking stockholder approval of the defective Plan, are breaches of their duties of loyalty to the Company in that these constitute acts and omissions contrary to the best interests of the Company and as to which they had a material conflict of interest.

78.     The acts of the Individual Defendants in paying and accepting non-tax-deductible compensation under the Plan, and in failing to structure a compensation plan with objective

performance criteria and for a reasonable maximum per Named Executive Officer, are disloyal to the Company, and not in good faith.

79.     As a result of these actions of the Individual Defendants, the Company has been and will be damaged.

80.     Plaintiff has no adequate remedy at law.

## COUNT III

### Waste of Corporate Assets

**(Derivative Claim On Behalf of the Company Against the Individual Defendants)**

81.     Plaintiff realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

82.     The Individual Defendants' payment of non-tax-deductible compensation under the Plan to the Officer Defendants, and the Officer Defendants' acceptance of the same have been or will be irrational and constitute waste, and injure the Company by causing it to lose tax benefits and by subjecting the Company to needless tax liability.

83.     The Individual Defendants approved the Plan and the amendment to the Plan, which provides for maximum payments in amounts so excessive, that no officer or director of ordinary sound business judgment would award them so as to constitute waste.

84.     As a result of these actions of the Individual Defendants, the Company has been and will be damaged.

85.     Plaintiff has no adequate remedy at law.

86.     Termination of the Plan, an injunction, an equitable accounting with disgorgement, and reimbursement to the Company are required to redress the injury.

## COUNT IV

**Unjust Enrichment**

**(Derivative Claim On Behalf of the Company Against the Individual Defendants)**

87.     Plaintiff realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

88.     The Individual Defendants have been or will be unjustly enriched as a result of their acceptance of bonuses under a plan that was insufficiently disclosed to the stockholders who were solicited to approve it.   The Individual Defendants' acceptance of such improperly paid compensation has or will constitute unjust enrichment.

89.     As a result of the actions of the Individual Defendants, the Company has been and will be damaged.

90.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectively prays for the following relief:

A.      For an order declaring void the vote of the stockholders for the amendment of the Plan;

B.      For an order terminating the Plan and an injunction against payments under it;

C.      For an order requiring equitable accounting, with disgorgement, in favor of the Company for the losses that it has and will sustain by virtue of the conduct alleged herein;

D.      For an order awarding damages, together with pre- and post-judgment interest to the Company;

E.      For an order awarding Plaintiff costs and disbursements of this action, including reasonable accountants, experts, and attorneys fees; and

F.     Granting such additional or different relief, including monetary relief, that the interests of justice or equity may require.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 21, 2011

**RIGRODSKY & LONG, P.A.**

By: _____
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
919 North Market Street, Suite 980
Wilmington, Delaware 19801
Tel.:  (302) 295-5310
Fax:  (302) 654-7530

*Attorneys for Plaintiff*

**OF COUNSEL:**

**MILBERG LLP**
Anita Kartalopoulos
Benjamin Y. Kaufman
Kent A. Bronson
Andrei V. Rado
Gloria Kui Melwani
One Pennsylvania Plaza
New York, New York 10119
Tel.: (212) 594-5300
Fax: (212) 868-1229