**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NEW JERSEY BUILDING LABORERS PENSION FUND, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| F. MICHAEL BALL, HERBERT W. BOYER, Ph.D, DEBORAH DUNSIRE, M.D., JEFFREY L. EDWARDS, MICHAEL R. GALLAGHER, DAWN E. HUDSON, ROBERT A. INGRAM, TREVOR M. JONES, Ph.D, LOUIS J. LAVIGNE, JR., DAVID E.I. PYOTT, RUSSELL T. RAY, STEPHEN J. RYAN, M.D., and SCOTT M. WHITCUP, | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 11-1153-LPS-SRF |
| Defendants. | ) ) | |
| - and - | ) ) | |
| ALLERGAN, INC., | ) ) | |
| Nominal Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this shareholder derivative action brought under Section

14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a) *et seq.*,

are two motions to dismiss plaintiff New Jersey Building Laborers Pension Fund's ("NJBLPF")

verified complaint pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6), which were

filed by nominal defendant Allergan, Inc. ("Allergan") (D.I. 23), and individual defendants F.

Michael Ball ("Ball"), Herbert W. Boyer, Ph.D. ("Boyer"), Deborah Dunsire, M.D. ("Dunsire"),

Jeffrey L. Edwards ("Edwards"), Michael R. Gallagher ("Gallagher"), Dawn E. Hudson

("Hudson"), Robert A. Ingram ("Ingram"), Trevor M. Jones, Ph.D. ("Jones"), Louis J. Lavigne,

Jr. ("Lavigne"), David E.I. Pyott ("Pyott"), Russell T. Ray ("Ray"), Stephen J. Ryan, M.D.

("Ryan"), and Scott M. Whitcup ("Whitcup") (collectively, the "Individual Defendants;" together

with Allergan, "Defendants") (D.I. 26), on February 7, 2012. For the following reasons, I

recommend that the court grant Allergan's motion to dismiss pursuant to Rule 23.1 and deny as

moot the Individual Defendants' motion to dismiss pursuant to Rule 12(b)(6).

## II.     BACKGROUND

### A.     The Parties

NJBLPF was a stockholder of Allergan at the time of the alleged misconduct and has

continuously owned stock in Allergan since that time. (D.I. 1 at ¶ 11)

Allergan is a publicly traded global pharmaceutical company that is incorporated in

Delaware and maintains its principal place of business in California. (*Id.* at ¶ 12) Allergan

focuses on discovering, developing and commercializing innovative pharmaceuticals, biologics

and medical devices, making products that include ophthalmic pharmaceuticals, dermatology

products, and neurological products such as Botox. (*Id.*)

Defendants Boyer, Dunsire, Gallagher, Hudson, Ingram, Jones, Lavigne, Pyott, Ray,

Ryan, and Schaeffer (collectively, the "Director Defendants") are members of Allergan's Board

of Directors (the "Board"). (*Id.* at ¶¶ 13-23) Gallagher, Hudson, Ingram, Lavigne, Ray, and

Schaeffer are members of Allergan's Organization and Compensation Committee (the

"Compensation Committee"). (*Id.* at ¶¶ 15-17, 19, 21, 23)

Defendants Pyott, Ball, Edwards, and Whitcup (the "Executive Defendants") served as

2

Allergan's top executive officers during the relevant time period. (*Id.* at ¶¶ 20, 25-27) Pyott serves as Allergan's CEO and became chairman of the Board in 2001. (*Id.* at ¶ 20) Pyott served as President from January 1998 to February 2006, and again from March 2011 to the present. (*Id.*) Ball served as President of Allergan until March 27, 2011. (*Id.* at ¶ 25) Edwards has served as Allergan's Executive Vice President of Finance and Business Development, and as Chief Financial Officer ("CFO"), since September 2005. (*Id.* at ¶ 26) Whitcup has served as Allergan's Executive Vice President of Research and Development since July 2004, and became the Chief Scientific Officer in April 2009. (*Id.* at ¶ 27) The Executive Defendants are "covered employees" as defined in Section 162(m) of the Internal Revenue Code. (*Id.* at ¶ 28)

## B.    The Proxy Statement

On March 8, 2011, the Director Defendants issued a proxy statement (the "Proxy Statement")[1] seeking shareholder approval of Allergan's 2011 Incentive Award Plan (the "2011 Plan"), among other things.[2] (*Id.* at ¶ 34) The Proxy Statement indicated that the 2011 Plan was designed to allow for tax-deductibility of incentive-based executive compensation awards pursuant to Section 162(m). (*Id.* at ¶ 37) The 2011 Plan lists thirty-two performance goals used to determine future compensation awards. (*Id.* at ¶ 40) The 2011 Plan further sets a maximum amount of compensation of 1,500,000 shares of stock or a maximum of $5 million in cash. (*Id.*

---

[1]The court may consider documents that are referenced in the complaint on a motion to dismiss filed pursuant to Rule 12(b)(6). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

[2]The 2011 Plan serves as an amendment and restatement of Allergan's 2008 Incentive Award Plan (the "2008 Plan"). (D.I. 27, Ex. A at 23) As of March 4, 2011, 4,126,358 shares of Allergan common stock remained outstanding under the 2008 Plan. (*Id.*)

at ¶ 47) Allergan's stock price on March 3, 2011 was $72.06, which would equate to an award of $113,090,000 for any participant eligible to receive the maximum amount.  (*Id.*)

Both Executive Defendants and Director Defendants are eligible to participate in the 2011 Plan.  (*Id.* at ¶ 64)  In addition to the awards generally given to the Plan participants, the Director Defendants are eligible to receive Transition Restricted Stock Awards.  (*Id.* at ¶ 65)

On May 3, 2011, Allergan's shareholders approved the 2011 Plan at Allergan's annual meeting.  (*Id.* at ¶ 3)

Without first making a demand on the Board, NJBLPF initiated this lawsuit on November 21, 2011, alleging derivative claims on behalf of Allergan against the Board and the Executive Officers.  (D.I. 1)  NJBLPF alleges that Allergan's shareholders approved the 2011 Plan because they were led to believe that all compensation paid under the 2011 Plan would be tax deductible. NJBLPF alleges four causes of action in its complaint:  (1) violations by all Defendants of Section 14(a) of the Exchange Act, International Revenue Code Section 162(m), and the Treasury Regulations, (2) breaches of fiduciary duty, (3) waste of corporate assets, and (4) unjust enrichment.  Allergan contends that all four counts should be dismissed for failure to serve a pre-suit demand or to adequately plead demand futility.

4

## III.   LEGAL STANDARD[3]

Pursuant to Federal Rule of Civil Procedure 23.1, a shareholder plaintiff who sues the

board of directors on behalf of the corporation must "allege with particularity the efforts, if any,

made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the

reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ.

P. 23.1; *see also Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007).  However, Rule 23.1 only

addresses the adequacy of the plaintiff's pleadings.  "The substantive requirements of demand are

a matter of state law." *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992); *see also King v.

Baldino*, 409 F. App'x 535, 537 (3d Cir. 2010).

Under Delaware law, "the entire question of demand futility is inextricably bound to

issues of business judgment and the standards of that doctrine's applicability." *Aronson v. Lewis*,

473 A.2d 805, 812 (Del. 1984) (overruled on other grounds).  In determining whether demand

would have been futile,

> [t]he trial court is confronted with two related but distinct questions: (1) whether
> threshold presumptions of director disinterest or independence are rebutted by
> well-pleaded facts; and, if not, (2) whether the complaint pleads particularized
> facts sufficient to create a reasonable doubt that the challenged transaction was the
> product of a valid exercise of business judgment.

*Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991) (overruled on other grounds).  If either of these

two inquiries is met, demand is excused.  *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906

---

[3]The complaint in the present action sets forth only derivative causes of action.  Because
NJBLPF has failed to sufficiently plead demand futility for the reasons set forth at § IV, *infra*, the
court need not reach the Rule 12(b)(6) analysis.  *See Abrams v. Wainscott*, C.A. No. 11-297-
RGA, 2012 WL 3614638, at *4 (D. Del. Aug. 21, 2012) (concluding that, "[b]ecause Plaintiff
has not demonstrated demand futility, the Court need not reach Defendants' other arguments
about . . . failure to state a claim under Rule 12(b)(6).").

A.2d 808, 820 (Del. Ch. 2005).

## IV.   DISCUSSION

### A.   Director Disinterestedness

"[D]irectorial interest exists whenever divided loyalties are present, or where the director stands to receive a personal financial benefit from the transaction not equally shared by the shareholders." *Blasband*, 971 F.2d at 1048. To find that demand is futile due to director interest or a lack of independence, a majority of the board of directors, or one-half of an evenly-numbered board, must be interested or lack independence. *Beam v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004). "Disinterested 'means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.'" *In re Dow Chem. Co. Deriv. Litig.*, C.A. No. 4349-CC, 2010 WL 66769, at *7 (Del. Ch. Jan. 11, 2010) (quoting *Aronson*, 473 A.2d at 812). However, a director is not financially interested solely because he receives customary compensation for his board service. *Seinfeld v. Slager*, 2012 WL 2501105, at *2 (Del. Ch. June 29, 2012). "Generally, the interest at issue must be material to the director, and materiality is assessed based upon the individual director's economic circumstances." *Freedman v. Adams*, C.A. No. 4199-VCN, 2012 WL 1099893, at *6 (Del. Ch. Mar. 30, 2012), *aff'd*, 58 A.3d 414 (Del. 2013).

Defendants first contend that the Director Defendants' eligibility to participate in the 2011 Plan is insufficient to demonstrate a debilitating interest. (D.I. 24 at 9-10) Specifically, Defendants allege that a similar incentive plan would have remained in place even if the stockholders failed to approve the 2011 Plan, and NJBLPF fails to show any additional benefit

6

members of the Board would receive beyond their ordinary compensation by approving the 2011 Plan. (*Id.*) Defendants further contend that only awards made to employees enjoy the challenged tax benefits, and only Pyott is both an executive and a member of the Board. (*Id.* at 11) Moreover, Defendants contend that the benefits received by the Board are not unusual compared to those received by directors of other corporations, and the Director Defendants did not face a substantial likelihood of personal liability that would call their disinterestedness into question. (*Id.* at 12-14)

In response, NJBLPF points to facts in the complaint demonstrating that every Board member was interested due to the Director Defendants' eligibility to receive compensation under the 2011 Plan. (D.I. 31 at 10-12) NJBLPF contends that continued compensation under the 2008 Plan is not feasible because insufficient shares of Allergan common stock remained outstanding to satisfy the maximum awards for each participant under the 2008 Plan. (*Id.* at 14)

The Director Defendants' eligibility to receive compensation under the 2011 Plan is insufficient to establish that a majority of the Board was interested in the disputed transaction. An allegation that directors are compensated for their services as directors is not necessarily enough to establish director interest under Delaware law. *See Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("The only averment permitting such an inference is the allegation that all GM's directors are paid for their services as directors. However, such allegations, without more, do not establish any financial interest."); *A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc.*, C.A. No. 19133-NC, 2002 WL 31820970, at*5 (Del. Ch. Dec. 4, 2002) ("It is well established in Delaware law that ordinary director compensation alone is not enough to show demand futility.").

7

NJBLPF's complaint states that the Board is interested because "[a]ll of the members of the

Board are eligible to participate in the Plan and are thus interested under Delaware law." (D.I. 1

at ¶ 64) NJBLPF does not allege that the compensation received by the Director Defendants

under the 2011 Plan exceeds the compensation received by directors of peer corporations. *Cf.*

*Seinfeld v. Slager*, 2012 WL 2501105, at * (Del. Ch. June 29, 2012); *Ausikaitis on behalf of*

*Masimo Corp. v. Kiani*, ---- F. Supp. 2d ----, 2013 WL 3753983, at * (D. Del. July 16, 2013).

NJBLPF's arguments regarding director interestedness also fail because the Directors are

not interested in awards of executive compensation. The Court of Chancery confronted

circumstances similar to the facts of this case in *Seinfeld v. Slager*, 2012 WL 2501105 (Del. Ch.

June 29, 2012). In *Slager*, the plaintiff alleged that the directors were interested in compensation

awarded to employees pursuant to a Stock Plan because the directors were also eligible to

participate in the Stock Plan. *Id.* at *10-14. The Court of Chancery determined that the directors

were interested in the Stock Plan to the extent that they awarded themselves time-vesting

restricted stock units because the Stock Plan placed "few, if any, bounds on the Board's ability to

set its own stock awards." *Id.* at *11. However, the Court of Chancery treated awards of time-

vesting stock units to employees under the Stock Plan as a separate transaction in which the

directors had no interest. *Id.* at *14. Specifically, the Court of Chancery determined that,

> [i]n regard to awards to the employees, the Plaintiff is not challenging the Stock
> Plan as a whole and does not allege that the Stock Plan itself is inherently
> wasteful; instead, he is challenging awards to employees, not to the directors
> themselves. The Plaintiff's claim stems from the Board's choice to award one
> particular type of option to those non-director employees. The Defendant
> Directors, therefore, with respect to employee awards, are not interested in the
> challenged *transactions*.

*Id.* (reiterating that the directors are interested under the terms of the Stock Plan as to amounts

awarded by the directors to themselves). In so ruling, the Court of Chancery rejected the

plaintiff's contention that the directors were interested in the transaction because they themselves

were general participants in the Stock Plan, even though they received no direct benefit from

awarding the time-vesting stock options to non-director employees. *Id.* at *13.

In the present matter, the causes of action set forth in the complaint are based entirely on

executive compensation under the 2011 Plan and the alleged non-tax-deductibility of those

executive compensation awards. (*Id.* at ¶¶ 70-90) As in *Slager*, the complaint in this action does

not challenge the 2011 Plan as a whole and instead focuses solely on compensation awarded to

Executives, with particular emphasis on the tax deductibility of those awards. The Directors

have no financial interest in those employee awards, and as such, they are not interested in the

challenged transactions for purposes of the demand futility inquiry under *Aronson*. *See Slager*,

2012 WL 2501105, at *14. The court must next evaluate the executive compensation claims

under the second prong of *Aronson* to determine whether demand would have been futile.

### B.      Business Judgment Rule

If the first prong of the *Aronson* test is not satisfied, a presumption arises that the board's

actions were the product of a valid exercise of business judgment. *Beam*, 845 A.2d at 1049. To

satisfy the second prong, a plaintiff must plead sufficient particularized facts to "raise (1) a

reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that

the board was adequately informed in making the decision." *In re J.P. Morgan*, 906 A.2d at 824

(quoting *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003)) (internal

quotations omitted). "A board's knowing and intentional decision to exceed the shareholders'

grant of express (but limited) authority raises doubt regarding whether such decision is a valid

9

exercise of business judgment and is sufficient to excuse a failure to make demand." *Ryan v. Gifford*, 918 A.2d 341, 354 (Del. Ch. 2007). When a board does not act or refrains from acting, the plaintiff must "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993). At the motion to dismiss stage, the court considers the well-pleaded allegations of the complaint, the documents incorporated into the complaint by reference and judicially-noticed facts, drawing all reasonable inferences from the complaint's allegations in favor of the plaintiff. *See Weiss*, 948 A.2d at 441; *see also White v. Panic*, 783 A.2d 543, 549 (Del. 2001).

Defendants contend that NJBLPF fails to plead particularized facts creating a reason to doubt the Board's honesty and good faith. (D.I. 24 at 16) Specifically, Defendants allege that the Proxy Statement never promises tax deductions, and no tax liability has actually accrued from the disputed compensation awards. (*Id.* at 16-17) According to Defendants, NJBLPF also fails to plead particularized facts creating a reason to doubt that the Board was adequately informed, and that the process employed by the Board was fundamentally flawed. (D.I. 24 at 17-18) Moreover, Defendants contend that the traditional demand requirements apply to derivative disclosure claims, and the complaint fails to sufficiently plead the existence of actual compensation awards that would constitute waste. (*Id.* at 18-20) In response, NJBLPF contends that the business judgment rule does not apply to protect directors when they make disclosures to stockholders, regardless of whether the disclosure claim is made in the context of derivative litigation. (D.I. 31 at 14-16)

Under Delaware law, derivative claims based on a proxy statement nondisclosure are not

excused from the demand requirement under *Aronson*'s second prong.[4] *See Abrams v.*

*Wainscott*, C.A. No. 11-297-RGA, 2012 WL3614638, at *3 (D. Del. Aug. 21, 2012) (citing

*Bader v. Blankfein*, 2008 WL 5274442, at *6 (E.D.N.Y. Dec. 19, 2008) and *Freedman v. Adams*,

2012 WL 1099893, at *16 n.155 (Del. Ch. Mar. 30, 2012)).  Moreover, NJBLPF fails to allege a

misstatement or omission in the Proxy Statement constituting a disclosure violation.  *See In re*

*Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 133-34 (Del. Ch. 2009) (concluding that

the complaint failed to allege with particularity "which disclosures were misleading, when the

Company was obligated to make disclosures, what specifically the Company was obligated to

disclose, and how the Company failed to do so" for purposes of the Rule 23.1 analysis).

The complaint alleges that the Director Defendants did not adequately disclose the

potential tax consequences of certain incentive compensation awards under the 2011 Plan, and

shareholders were led to believe that compensation awards would be tax deductible under

Section 162(m).  (D.I. 1 at ¶ 2)  However, the Proxy Statement only indicates that compensation

awards under the 2011 Plan are designed and intended to be tax deductible, without guaranteeing

tax deductibility.  Specifically, the Proxy Statement states that "[t]he 2011 Plan is designed to

enable us to grant performance-based equity and cash awards that qualify as 'performance-based

compensation' under § 162(m) of the Code," "[t]he Compensation Committee may grant awards

to employees who are or may be 'covered employees' . . . that are intended to be performance-

based compensation within the meaning of § 162(m) of the Code in order to preserve the

---

[4]This court has also held that claims for corporate waste are subject to the business
judgment rule, and a claim for waste "requires pleading particularized facts to create a reasonable
doubt that the board's decisions were the product of a valid exercise of business judgment to
excuse demand." *Abrams*, 2012 WL 3614638, at *4 (D. Del. Aug. 21, 2012) (citing *White v.*
*Panic*, 783 A.2d 543, 554-55 (Del. 2001)).

11

deductibility of these awards for federal income tax purposes," and "[t]here can be no assurance

that compensation attributable to awards granted under the 2011 Plan will only be treated as

qualified performance-based compensation under Section 162(m) and thus be deductible to us."

(D.I. 27, Ex. A at 23, 28, 34)  The Proxy Statement's indication that compensation under the

2011 Plan is designed and intended to be tax deductible does not constitute a misstatement

because the Proxy Statement never affirmatively promises that the compensation will be tax

deductible and the complaint fails to show that tax liability has actually been incurred. *See*

*Seinfeld v. O'Connor*, 774 F. Supp. 2d at 667 (finding that the proxy statement "does not assert

that the [Plan] *will* be tax-deductible, only that it is *intended* to be deductible under IRC §

162(m)).  NJBLPF's failure to adequately plead a misstatement precludes a finding that the

misleading disclosure was made knowingly or in bad faith for purposes of overcoming

application of the business judgment rule.

     Even if the court were to find that the complaint contains the requisite misstatement or

omission, NJBLPF fails to plead that the Board's violation of the compensation agreement was

knowing and intentional.  This court has rejected the notion that "a shareholder need only allege

a violation of a compensation agreement to excuse demand, without additional allegations of

knowledge and intent." *See Wainscott*, 2012 WL 3614638, at *3 (citing *Weiss v. Swanson*, 948

A.2d 433, 441-42 (Del. Ch. 2008); *Ryan v. Gifford*, 918 A.2d 341, 357-58 (Del. Ch. 2007);

*Sanders v. Wang*, 1999 WL 1044880, at *4-5 (Del. Ch. Nov. 8, 1999)).  Rather, Delaware courts

have held that a complaint which fails to plead specific factual allegations addressing the state of

mind inquiry does not meet the strict pleading requirements of Rule 23.1. *See In re Citigroup*,

964 A.2d at 134-35.  Nothing in NJBLPF's complaint suggests that the Director Defendants were

aware of the alleged misstatements or omissions, intended to cause harm to Allergan by incurring unnecessary tax liabilities, or acted in bad faith by not adequately informing themselves. For this reason, NJBLPF's disclosure claims fail to satisfy the demand requirement under the second prong of *Aronson*.

## V.    CONCLUSION

For the foregoing reasons, I recommend that the court grant Allergan's motion to dismiss pursuant to Rule 23.1 (D.I. 23) and deny as moot the Individual Defendants' motion to dismiss pursuant to Rule 12(b)(6) (D.I. 26).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: March 13, 2014

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE